**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TECH DATA PRODUCT MANAGEMENT,
INC.,

     Plaintiff,

                                 Case No. _____

     v.

DEEP INSTINCT (USA), INC.,

     Defendant.

_____/

## COMPLAINT

Plaintiff Tech Data Product Management, Inc. hereby sues Defendant Deep Instinct (USA), Inc. for breach of contract, and alleges:

### The Parties

1.     Plaintiff Tech Data Product Management, Inc. ("TDPMI") is a purchaser of technology products and services.

2.     Defendant Deep Instinct (USA), Inc. ("DI") is a cybersecurity company that sells cybersecurity (i.e., anti-virus, malware, etc.) software.

### Jurisdiction and Venue

3.     TDPMI is a Florida corporation with its principal place of business located in Clearwater, Florida. TDPMI is thus a citizen of Florida.

4.     DI is a Delaware corporation with its principal place of business located in New York City, New York. DI is thus a citizen of Delaware and New York.

5.    DI has wrongfully refused to refund TDPMI $2,000,018.20. The amount in controversy thus exceeds $75,000.

6.    Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs and interest, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332.

7.    This Court has personal jurisdiction over DI because DI operates, conducts, engages in, or carries on its business in Florida; is registered to do business in Florida and maintains an agent in the state; solicited business from a Florida citizen by directing such solicitation into the state; and breached a contract in this state by failing to perform acts required by the contract to be performed in Florida. Fla. Stat. §48.193(1)(a).

8.    Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to this action occurred in Clearwater, Florida, 28 U.S.C. § 1391(b)(2), and because TDPMI maintains its principal place of business in Clearwater, Florida, M.D. Fla. L.R. 1.02(b)(4).

<u>General Allegations</u>

9.    DI entered into the Deep Instinct Distribution Agreement with Tech Data Advanced Solutions (ANZ) Limited, which is a non-party, with an effective date of February 12, 2018 ("Distributor Agreement"). (Exhibit 1).[1]

---

[1] The Exhibits possibly contain confidential information. These documents will be served with the Complaint, but will not be filed on the open record until the parties confer on confidentiality.

10.     DI subsequently executed the Americas Rider to Distributor Agreement with TDPMI, among others, which Agreement had an effective date of May 2, 2019 ("Rider"). (Exhibit 2).

11.     The Rider added TDPMI to the Distributor Agreement so that TDPMI could distribute DI's products in the United States, Latin America, and the Caribbean.

12.     The Rider also made the terms and conditions of the Distributor Agreement applicable to TDPMI, except where the terms of the latter conflicted with those of the former, in which event the Rider controlled.

13.     Two terms from the Distributor Agreement that were made applicable to TDPMI under the Rider were sections 15.2 and 15.3, which state:

15.2.   Termination for Convenience. Either Party may terminate this Agreement for any reason or no reason by providing sixty (60) days written notice

15.3.   Termination for Cause. Either Party may terminate this Agreement, at any time, if the other Party breaches any material term of this Agreement and fails to cure that breach within thirty (30) days after notice thereof. This Agreement may also be terminated at any time if (i) Distributor breaches any of its payment obligations under this Agreement and fails to cure

that breach within fourteen (14) days after notice thereof from Deep Instinct; (ii) either party becomes the subject of a voluntary or involuntary petition in bankruptcy or proceeding relating to insolvency, receivership, liquidation or composition for the benefit of creditors; or (iii) either party is merged or consolidated, sells all or substantially all of its assets, or subject to any substantial change in management or control, excluding any change as a result of internal corporate restructuring.

14.     Among other terms, the Rider also states:

12. Section 15.6 is hereby inserted as follows:

Repurchase of Products Upon Termination. Upon the effective date of termination of this Rider for any reason, Deep Instinct agrees to repurchase in the amount of the Return Credit (i) all Products and all technical or promotional materials in TD Americas' inventory or in transit to TD Americas purchased from Deep Instinct, and (ii) all Products returned by Customers to TD Americas within ninety (90) days from the effective date of termination. TD Americas shall have up to ninety (90) days from the termination date to request an RMA from Deep Instinct. Deep Instinct shall issue the RMA within five (5) days from TD Americas' request or TD Americas shall return the Products to Deep Instinct, and Deep Instinct hereby authorizes such return, without the RMA. In the event Deep Instinct terminates for its convenience or TD Americas terminates for cause, Deep Instinct shall pay all freight charges related to the repurchase of Products. In the event that TD Americas terminates for its convenience or Deep Instinct terminates for cause, TD Americas shall pay all freight charges related to the repurchase of Products.

15.    After the Rider was executed and in force, TDPMI ordered millions of dollars' worth of product from DI.

16.    On January 14, 2020, TDPMI exercised its right to terminate the Rider and provided 60 days' notice. (Exhibits 3–4). In that same notice, TDPMI requested that DI issue an RMA (i.e., a refund) for the inventory of DI's product held by TDPMI. (Exhibit 4).

17.    TDPMI has 44,407 units of DI's product in inventory, with a value of $2,000,018.20.

18.    TDPMI renewed its demand for DI to issue an RMA by letter dated February 21, 2020. (Exhibit 5).

19.    Despite TDPMI's rightful demand, DI failed or refused to issue an RMA for the value of DI's product held in TDPMI's inventory.

20.    All conditions precedent to this action have either been satisfied or waived.

<u>Claim for Breach of Contract</u>

21.    TDPMI incorporates and re-alleges paragraph 1–20.

22.    TDPMI and DI entered into a binding contract; to wit, the Rider.

23.    TDPMI exercised its right to terminate the Rider with 60 days' notice.

24.     TDPMI requested, as was its contractual right, that DI issue an RMA for the inventory of DI's product held by TDPMI, which inventory is valued at $2,000,018.20.

25.     Despite TDPMI's repeated demands for DI to issue the RMA as required under the Rider, DI has failed to do so.

26.     DI's failure to issue the RMA constitutes a breach of the parties' contract.

27.     DI's breach of the Rider damaged TDPMI in the amount of $2,000,018.20.

**WHEREFORE**, Plaintiff Tech Data Product Management, Inc. ("TDPMI") requests that the Court enter judgment in its favor, and against Defendant Deep Instinct, Inc. ("DI"), for $2,000,018.20 in actual damages, along with an award of pre- and post-judgement interest and costs, and all other relief the Court deems just and proper.

Respectfully submitted,

**CARLTON FIELDS, P.A.**

*/s/ Kevin P. McCoy*
Kevin P. McCoy
Florida Bar No. 36225
David R. Wright
Florida Bar No. 0119453
4221 W. Boy Scout Blvd., Suite 1000
Tampa, Florida 33607
Telephone: 813-223-7000
Fax: 813-229-4133
Primary E-Mail:
        kmccoy@carltonfields.com
        dwright@carltonfields.com
Secondary E-Mail:
        lfuller@carltonfields.com
        kdelvalle@carltonfields.com

*Attorneys for Plaintiff Tech Data Product Management, Inc.*